UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
ROBERT F. NEBEL, JR.,                                      :    **MEMORANDUM DECISION**
                                                           :    **AND ORDER**
                                Plaintiff,                 :
                                                           :    16-cv-6412 (BMC)
            - against -                                    :
                                                           :
CAROLYN W. COLVIN,                                         :
                                                           :
                                Defendant.                 :
---------------------------------------------------------- X

**COGAN**, District Judge.

The sole issue in this disability review case under the Social Security Act is whether the Administrative Law Judge properly afforded only "some weight" to the opinions of two of plaintiff's treating physicians. It is common ground that if the ALJ had accepted the findings of these two physicians as to plaintiff's functional limitations from his knee osteoarthritis and back disorder, the ALJ would have found that plaintiff is disabled. The question is whether the record as a whole contains an adequate basis for their opinions. As explained further below, I conclude that the record does provide an adequate basis for their opinions on plaintiff's functional limitations, and therefore grant plaintiff's motion for judgment on the pleadings.

A treating physician's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The treating physician's opinion need not be consistent with all of the other evidence, as long as there is no other substantial evidence in the record that contradicts the treating physician's opinion.

The two treating physicians here certainly have the credentials and did the work necessary to support their opinions. Dr. Daniel Wilen is a board-certified orthopedic surgeon. He treated plaintiff for 18 months, at regular intervals starting about six weeks after the alleged onset date and continuing through July 2014. (Plaintiff had a history of injuries to his knees which predated his first meeting with Dr. Wilen by nearly a dozen years, and injuries to his back starting several years before the claimed onset date.) As the ALJ noted, Dr. Wilen's findings were substantially similar across examinations. The back, knee, and wrist impairments that Dr. Wilen found were supported by X-rays, MRIs, and EMGs,[1] and they were the same ones that the ALJ found to be severe.[2] In his report, Dr. Wilen opined that plaintiff needed physical therapy and orthopedic monitoring, and would possibly need total knee replacements. He thought that plaintiff could do less than four hours of sitting and less than four hours of walking or standing in an eight-hour workday, and would need frequent periods of bed rest and frequent breaks during the workday.

Dr. Christopher Perez, another of plaintiff's treating physicians, is a board-certified physiatrist. Plaintiff saw him during approximately the same period as Dr. Wilen. Dr. Perez reviewed the same MRIs and EMGs as Dr. Wilen, and reached a similar diagnosis as to plaintiff's impairments, which, as noted above, were the same impairments found by the ALJ. Dr. Perez thought physical therapy improved plaintiff's condition, but only temporarily. He recommended viscosupplementation injections[3] to plaintiff's knees, which plaintiff received in

---

[1] Electromyography ("EMG") is a diagnostic procedure used to identify neuromuscular abnormalities which measures muscle response or electrical activity in response to a nerve's stimulation of the muscle.

[2] In addition to knee osteoarthritis and back disorder, the ALJ also found that plaintiff had severe impairments of carpal tunnel syndrome and sinus disorder. I focus on plaintiff's knee and back problems because the ALJ discounted the treating physicians' opinions based on the functional limitations those physicians concluded were the result of plaintiff's knee osteoarthritis and his back disorder.

[3] Viscosupplementation is a medical procedure where lubricating fluid is injected into a joint.

his right knee in December 2013, and an epidural corticosteroid injection for plaintiff's low back, which plaintiff received in July 2014. Dr. Perez also thought that plaintiff would eventually need to have a total right knee replacement and spine surgery, specifically a laminectomy (removal of part of the vertebra) and multi-level lumbar fusion. Dr. Perez's functional assessment was even more restricted than Dr. Wilen's – he thought plaintiff could sit for less than four hours per day, stand or walk for only two hours per day, and lift or carry less than 10 pounds only occasionally. Dr. Perez thought that plaintiff would need frequent breaks during the workday, but did not think that he would need periods of bed rest. Dr. Perez reported that plaintiff's conditions were not likely to improve and that continued treatment similar to what plaintiff had already received would only manage plaintiff's symptoms.

The ALJ's reasons for discounting these opinions are not terribly persuasive. The ALJ gave only "some weight" to the opinions of plaintiff's treating physicians because the ALJ concluded that (1) they were only "somewhat consistent" with the overall medical record and (2) there was "little support" in the objective tests and clinical findings for the "extreme restriction in functioning" assessed, particularly given the types of treatment chosen by these doctors (physical therapy, injections, NSAIDs, and muscle relaxants).

The first reason is circular, as reflected by the ALJ's decision to accept the treating physicians' opinions "to the extent they are consistent with above residual functional capacity." It suggests that the ALJ has first determined the claimant's residual functional capacity ("RFC") with at most passing reference to the treating physicians' opinions – rather than based on those opinions, as it should be – and then fit those physicians' opinions into the RFC to the extent he can without undermining the determination that he has already made. This run-around reasoning is unfortunately common, but no more justified by its prevalence.

The second reason is more legitimate – internal inconsistencies or inconsistencies between the two treating physicians' opinions could undermine the credibility of the extensive limitations they reported, and might be sufficient reason to discount those opinions. But absent such inconsistencies, contradictory conclusions by other medical witnesses would have to be thoroughly supported in order to overcome the treating physician rule; if the record is evenly balanced between a treating physician's opinion and, for example, the opinion of a consulting physician, then the former prevails.

As the ALJ found, there is certainly support in both doctors' examination results and in the test reports they considered in reaching their conclusions, as well as in plaintiff's complaints, that plaintiff's knee osteoarthritis and back disorder have reduced his functioning. Based on the X-rays, MRIs, and EMGs, plaintiff's treating physicians found bulging discs, foraminal narrowing (spinal nerve root compression), spasms, and straightening in plaintiff's cervical spine; herniation, nerve root compression, spondylolisthesis (misaligned vertebra), and disc dehydration in plaintiff's lumbar spine; osteoarthritis, post-surgery effusion and swelling, post-surgery meniscal tear and internal derangement in plaintiff's right knee; and carpal tunnel syndrome in both of plaintiff's wrists. The physical examinations also showed at least mildly and sometimes below-normal lumbar and knee flexion tests, positive straight-leg raising tests (sometimes), lumbosacral muscle spasms (sometimes), and tenderness in plaintiff's back.

There is no dispute that these findings were present, although they were not universally found in all instances; for example, Dr. Wilen recorded consistent positives for the straight-leg raising test, while Dr. Perez's treatment notes showed consistent negatives, except during his final examination of plaintiff (and both physicians consistently found that lumbosacral spine pain was elicited by motion). The ALJ gave only "some weight" to the treating physicians' opinions

because he concluded that their clinical findings did not support their conclusion that plaintiff's impairments were sufficiently intense, persistent, and limiting so as to prevent plaintiff from either sitting or standing and walking for long periods of time and that plaintiff's impairments would require him to take frequent breaks during the workday.

Based on the tests and clinical findings described above, and adding to them plaintiff's prior knee surgeries and his complaints of tingling and numbness down his lower back, it is not clear to me what more the ALJ expected these doctors to find to support their conclusions. I see no reason why the doctors' treatment notes, reflecting these findings and conditions, even if not found invariably, could not support a conclusion that plaintiff cannot sit for four hours per day. Both doctors' treatment notes consistently recorded that plaintiff was in pain frequently – 75% of the time. Dr. Perez's treatment notes from May 2013 through July 2014 all state that plaintiff reported that his lower back pain was worse while sitting (Dr. Wilen's notes do not reflect that he asked plaintiff this question).

That the doctors did not previously prohibit plaintiff from sitting for more than four hours per day cannot be dispositive because plaintiff's circumstances do not suggest such a prohibition was necessary. Plaintiff stated that his treating physicians told him to stop activities when he felt pain, and plaintiff was retired and in control of his daily routine during the time they treated him (he reported filling his time by reading magazines, watching TV, taking naps, attending physical therapy, and occasionally watching his sons' sporting events).

The ALJ placed significant emphasis on how the "conservative treatment" that these doctors prescribed for plaintiff undercut the doctors' conclusions about his limitations. But this is not an adequate reason to discount a treating physician's opinion on medical evidence. See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008); Shaw v. Chater, 221 F.3d 126, 134-35 (2d

5

Cir. 2000). "[T]he ALJ's . . . notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered . . . is not the overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion." Shaw, 221 F.3d at 134-35.

And even if it has some probative value, it is not clear that plaintiff's regimen really was so conservative. Plaintiff received a series of injections in his right knee to alleviate pain, and Dr. Perez's notes indicate that plaintiff planned to do another set in his left knee in August or September 2014. In April 2013, Dr. Perez referred plaintiff to an interventional pain-management doctor for an epidural corticosteroid injection to reduce the nerve pain in his back; although plaintiff initially declined, he received one in July 2014. And while the primary medications these doctors recommended were nonsteroidal anti-inflammatory drugs (NSAIDs), which are generally viewed as conservative compared to other pain-management drugs, such as opioids, some of the particular NSAIDs prescribed here were stronger and possibly involved greater side effects than the ones obtainable over-the-counter. And Dr. Perez also prescribed muscle relaxants, most likely for the back spasms that plaintiff was suffering.

Finally, while plaintiff's primary treatment was physical therapy, which is usually regarded as conservative, he attended more than 130 sessions – a substantial number – over a period of eighteen months, which undermines the conclusion that it was a "conservative" approach. The significant number of physical therapy sessions certainly supports plaintiff's complaints of severe pain over an extended period of time.

Because the opinions of plaintiff's treating physicians on his functional limitations, particularly his ability to sit, stand, or walk for long periods of time, were well-supported by clinical and laboratory diagnostic techniques and were consistent with, if not perfectly aligned

with, other substantial evidence in the record, the ALJ erred by disregarding those treating physicians' conclusions. Plaintiff's [11] motion for judgment on the pleadings is therefore GRANTED and defendant's [16] cross-motion for judgment on the pleadings is DENIED. The judgment of the Commissioner is reversed.

The only remaining issue is whether the case should be remanded for further administrative proceedings or solely for the calculation of benefits. Further administrative proceedings are necessary where there are gaps in the administrative record or where the ALJ applied an improper legal standard to an otherwise complete record. See Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004); Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996). But where the ALJ reached a mistaken conclusion after applying the correct legal standard to a complete record, remand solely for the calculation of benefits is appropriate. See Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999).

Here, the ALJ reached a mistaken conclusion by failing to give sufficient weight to the well-supported opinions of plaintiff's treating physicians on what I can only conclude is a complete record (neither party has suggested otherwise). And the opinions of plaintiff's treating physicians as to his functional limitations – sitting less than four hours and standing or walking less than four hours per eight-hour workday, with frequent breaks – are dispositive of the

disability determination. In this situation, further administrative proceedings would be pointless.

The case is therefore remanded solely for the calculation of benefits.

**SO ORDERED.**

                                                              _____
                                                                               U.S.D.J.

Dated: Brooklyn, New York
       November 28, 2017